UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANTRELLE M. BANKS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-338** |
| **THE LEONA GROUP** | **DIVISION 3** |

**ORDER**

Before the Court is the Motion for Summary Judgment [Doc. #11] filed by defendant The Leona Group ("defendant"). This case is before the undersigned Magistrate Judge pursuant to the consent of the parties. 28 U.S.C. § 636(c). On January 6, 2010, the Motion for Summary Judgment came on for oral hearing before the undersigned. Present were Ronald Wilson on behalf of plaintiff Antrelle Banks and Scarth Clark on behalf of defendant. After oral argument, the Court took the motion under advisement. The Court has reviewed the motion, the opposition thereto, the reply memorandum, the applicable case law and the parties' oral argument. For the following reasons, the Court GRANTS the Motion for Summary Judgment [Doc. #11] and DISMISSES Banks' case with prejudice.

**I.    Background**

Plaintiff Antrelle M. Banks worked at the New Orleans Free Academy ("Free Academy"), a school owned and operated by defendant. Banks worked at the Free Academy from September 11, 2006 until November 12, 2007, when defendant terminated her employment. Banks was the office manager at the Free Academy and earned a yearly salary of $28,000.00.

The principal at the time of Banks' employment was Ms. Cynthia Moore. Moore was Banks' supervisor. On September 22, 2006, Banks signed an employment letter, and, on December 15, 2006, Banks signed a copy of the Leona Employee Handbook. (Exs. D & F, attached to Def.'s Mem. Supp. Mot. Summ. J.). Both the employment letter and the Leona Employee Handbook informed Banks that she was an at-will employee.

On November 1, 2007, Banks and a male teacher, Mr. Darren Bickham, assisted Moore to resolve an altercation between two female students. On that day, shortly after 11:30 a.m., Bickham asked Banks to call a Mr. Perkins, a police officer who was a resource for the school. Banks phoned Perkins, but Perkins did not respond. In Bickham's presence, Banks phoned Moore to ask why the call to Perkins was necessary. Moore also did not answer, but the telephone line remained open while Banks and Bickham continued their conversation. Banks then searched for Moore and found her in the school's yard.

Banks and Bickham ultimately escorted the girls involved in the altercation to Moore's office per her instructions. Bickham then returned to teach his class. Banks worked with Moore to resolve the situation. The police and the parents of the two girls were phoned. Banks went to her car for her lunch break. On the way to her car, officers of the New Orleans Police Department allegedly approached Banks and asked her personal information about Moore. Banks called Moore to inform her of this. Banks later returned to her desk after 2:00 p.m.

Apparently, the two girls, after having returned to class, began to fight again and were returned to Moore's office. After helping the security guard to return the girls to Moore's office, Bickham again returned to teach his class. Banks again called the police. The two girls were

2

released to the custody of their parents after spending some time in the police car. At the end of the day, both Banks and Bickham received a letter from Moore, which indicated that she wanted to meet with both of them the following day to discuss a recording of a phone call that she had heard on her voice mail. (Ex. H, attached to Def.'s Mem. Supp. Mot. Summ. J.). The following day, Moore informed both Banks and Bickham that they were to be suspended pending a review of the events that had occurred the day before, including statements recorded on Moore's voice mail.

After reviewing the incident, Moore, with the concurrence of defendant's district manager, Dr. Easton, and defendant's Human Resources Manager, Diane Griggs, terminated Banks. On November 5, 2007, both Banks and Bickham received a letter from Moore, in which she informed them that their comments on the voice recording were insubordinate and undermined Moore's authority. (Ex.s P-4 & P-5, attached to Pl.'s Mem. Opp.). Moore also informed Banks that her alleged conflicting directions to the police demonstrated disloyalty and betrayal. (Ex. P-4, attached to Pl.'s Mem. Opp.).

Moore informed Banks by letter dated November 16, 2007 that the voice recording was not the sole basis of the decision to terminate her but that her actions were the ground for termination. (Ex. B, attached to Def.'s Mem. Supp. Mot. Summ. J.). On November 29, 2007, Banks received a letter from Griggs that advised her that Moore had decided to terminate her because she "interfered with, and acted contrary to, her directives." (Ex. A, attached to Def.'s Mem. Supp. Mot. Summ. J.). Bickham was informed that he would be allowed to return to his employment but would not receive pay for the period during which he had been suspended and would remain on probation during the remainder of the school year. (Ex. G, attached to Def.'s Mem. Supp. Mot. Summ. J.). While Moore

3

determined that Bickham had demonstrated a dislike for her administrative decisions, she noted that he was an excellent teacher who brought a lot to his team of co-workers. (*Id.*). Defendant ultimately hired a female, Ms. Hope Franklin, as the new office manager. (Ex. C, attached to Def.'s Mot. Supp. Summ. J.).

Plaintiff filed a grievance with the Equal Employment Opportunity Commission ("EEOC"), alleging gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* The EEOC found no violation of any employment law in its Notice of Dismissal dated October 29, 2008. (Ex. E, attached to Def.'s Mem. Supp. Mot. Summ. J.). Banks timely filed the instant Complaint.

In her Complaint, Banks alleges that she and Bickham engaged in the same conduct. She also alleges that because defendant only suspended Bickham and then fired her, defendant terminated her on the basis of her gender, female.[1]

## II. The Parties' Contentions

### A. Defendant's Motion for Summary Judgment

Defendant argues that it is entitled to summary judgment on two grounds. Defendant first argues that Banks can not make out a *prima facie* case of discriminatory employment practices because she and Bickham – Banks' alleged comparator – are not "similarly situated" employees. Citing Fifth Circuit case law, defendant notes that courts require both that the employee status and the misconduct resulting in the adverse employment action be "nearly identical." *Lee v. Kan. City*

---

[1] The Complaint also alleged a claim for retaliation, but Banks' counsel stipulated at her deposition and at the oral hearing that she would not pursue a retaliation claim.

*S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) ("The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.").

Defendant notes that Banks and Bickham had substantially different work responsibilities. Defendant points out that Banks' responsibilities included:

> Basically overall office management as far as handling ordering, payroll, attendance for students, attendance for employees, right hand to the school leader, typing up all documents and working hand in hand with human resources in Michigan, making sure everything was sent correctly, making sure everything was – all paperwork – basically I was like a human resources as well. Had to do drug testing, schedule interviews.

(Ex. P-1 at pp. 9-10, attached to Pl.'s Mem. Opp.). Contrary to Banks' position as office manager, Bickham was – and is – a certified teacher with specialized training in teaching students. Bickhams' sole responsibilities were to teach his class and perform cafeteria and morning duty. (Dep. of Darren Bickham at p. 12, quoted in Def.'s Mem. Supp. Mot. Summ. J. at p. 9).[2] Indeed, at her deposition, Banks testified that her job duties were different than Bickhams'. (Dep. of Antrelle Banks at p. 68, attached to Def.'s Reply Mem.). Accordingly, defendant argues, Banks and Bickham are not similarly situated.

Defendant also argues that the misconduct of Banks and Bickham was not "nearly identical." Defendant notes that Moore terminated Banks for the following reasons:

---

[2] While many of the pages of both plaintiff's and Bickham's depositions are not attached to the motion and the opposition, the Court notes that neither Banks nor defendant disputes any quoted deposition testimony.

5

> Your decision to leave your desk at approximately 11:45 a.m. and return at approximately 2:10 p.m. to handle or interfere with a decision that the school leader had made is unprofessional conduct and insubordinate. . . . This decision was not directly based on the recording, but your actions.

(Ex. B, attached to Def.'s Mem. Supp. Mot. Summ. J.). Accordingly, defendant contends that Banks was terminated for unprofessional and insubordinate conduct. During the time that Banks committed such behavior, Bickham was teaching his class. Bickham, on the other hand, was suspended solely because of his comments on the voice recording that questioned Moore's administrative decisions. (Ex. G, attached to Def.'s Mem. Supp. Mot. Summ. J.). The only similar conduct in which Banks and Bickham engaged was the attempt to manage the two fighting girls.

Lastly, defendant argues that it is entitled to summary judgment because the position was not filled by someone outside the protected class as defendant hired a female, Ms. Hope Franklin, as the office manager after it terminated Banks. (Ex. C, attached to Def.'s Mem. Supp. Mot. Summ. J.).

### B.     Banks' Opposition

Banks argues that she has proven a *prima facie* case of gender discrimination in employment. Banks argues that the sole fact that Banks and Bickham are not "similarly situated" is not fatal to her case given that both Banks and Bickham were acting outside the scope of their duties at the time of the incident that gave rise to Banks' termination. Banks notes that, at his deposition, Bickham admitted that his job duties did not entail "doubling as a security officer." (Ex. P-2 at p. 21, attached to Pl.'s Mem. Opp.). Bickham testified at his deposition that the security officer was generally present during his cafeteria duty and that, if he had a problem in his classroom, he would press the

6

button for security to come and remove any misbehaving student. (*Id.*). Banks contends that "[i]t stands to reason that when two employees undertake responsibilities outside the scope of their defined job description, and it is done with the knowledge and approval of the supervisor, they are 'nearly identical' for that limited purpose." (Pl.'s Mem. Opp. at p. 13).

Banks also maintains that Banks' and Bickham's conduct was "nearly identical." Citing the November 1, 2007 letter from Moore to Banks and Bickham – in which Moore stated that she had heard the voice recording and would speak to them both the following day – Banks argues that had there been no voice recording, there would have been no disciplinary action. Banks notes that both she and Bickham have admitted that she made no disrespectful or discourteous comments about Moore on the recording.[3] (Pl.'s Mem. Opp. at p. 14). Bickham readily admits that he alone made such comments about Moore on the voice recording. (*Id.*).

Banks notes that in the November 5, 2007 letter, Moore accused her of giving conflicting instructions to the police. Banks contends that there is a total absence of proof for such an allegation. Banks argues that in all of her dealings with the police, she was acting in the presence of, pursuant to the instruction of and with the approval of Moore. Banks argues that had this been the true reason for her termination, Moore would have mentioned this incident in the letter dated November 1, 2007 – the date on which it occurred – and not in the later letter dated November 5, 2007.

Banks disputes the allegations in the letter dated November 16, 2007, in which Moore

---

[3] There is no evidence of the voice recording in the record. All counsel for parties admit that no one – except Moore herself – has ever heard the recording.

7

chastised her for not returning to her desk until after 2:00 p.m. Banks claims that during the entire time that she was away from her desk, Moore knew her whereabouts. Indeed, Banks claims, during this time period, she called the police, searched for Moore, located her, returned to the office with Moore, telephoned a parent at Moore's request, waited for the police report, called Moore to inform her that the police officer needed her birth date and waited for Moore to arrive to speak with the police officer.

Banks argues that because she has established a *prima facie* case of gender discrimination, defendant now has the burden to articulate a legitimate, non-discriminatory reason for her discharge. Banks stipulates that the reasons set forth in the letter dated November 16, 2007 are sufficient to meet defendant's burden. (Dep. of Antrelle Banks at pp. 65-66, attached to Def.'s Reply Mem.). Banks contends, however, that such reasons are a pretext.

Banks claims that she did not commit the acts outlined in the letter. She notes that Bickham alone committed offenses discourteous to Moore, undermined Moore's authority and encouraged a student to lie to Moore. Banks challenges the statements in the November 6, 2007 letter, in which Moore suspended – and did not terminate – Bickham. (Ex. G., attached to Def.'s Mem. Supp. Mot. Summ. J.). In that letter, Moore stated that Bickham was a good teacher. (*Id.*). Pointing to Bickham's Teacher Appraisal Form, Banks notes that Moore recorded a score of zero in two categories, even though the lowest score is one. (Ex. P-7, attached to Pl.'s Mem. Opp.). Banks also points out that Bickham had one prior suspension. (Ex. P-2 at pp. 15, 17, attached to Pl.'s Mem. Opp.). He had been accused of choking a student, but the infraction was later reduced to using profanity. (*Id.* at p. 17). Banks also notes that Moore stated that had Bickham's conduct involved

8

a student, her decision would have been different. Banks contends that Bickham's conduct did involve a student – encouraging one to lie to Moore. Banks also notes that Moore repeatedly referred to Bickham as "tall, dark and handsome," another factor that evidences bias on her part.

In conclusion, Banks contends that there are genuine issues of material fact that preclude a grant of summary judgment here: (1) Whether Banks and Bickham engaged in "nearly identical" conduct on November 1, 2007; (2) Whether the voice recording resulted in the disciplinary action taken against Banks; (3) Whether Banks engaged in the conduct set forth in the November 5, 2007 and November 16, 2007 letters; (4) Whether Bickham was a good teacher; and (5) Whether the reasons given for Banks' termination were a pretext for gender discrimination.

**C.     Defendant's Reply**

Defendant challenges Banks' argument that she and Bickham performed "nearly identical" duties at the time that they both subdued the altercating girls. Defendant first notes that Banks was terminated for conduct that occurred at a different time and after Bickham had returned to his teaching duties. In both letters dated November 5, 2007 and November 16, 2007, defendant notes that Moore terminated plaintiff for reasons other than the recorded conversation. Defendant argues that Banks was terminated due to her conduct in the office when interacting with the police and the parents of the children and for what Banks said then and how she said it. Moore described Banks as "unprofessional," "insubordinate," "disloyal" and added that Banks promoted herself as the person in charge. (Ex. B, attached to Def.'s Mot. Supp. Summ. J.). The conduct on which Moore based her observations occurred after Bickham returned to his classroom. Defendant contends that Banks presents no evidence to support the conclusion that the "one brief moment" when she and

9

Bickham were together and the conversation was recorded was the sole operative fact that controls the legal determination that Banks and Bickham were "similarly situated" employees.

Defendant maintains that even were the Court to determine that Banks and Bickham were "similarly situated," Banks can still not establish a *prima facie* case of discrimination because she can not show that the legitimate, non-discriminatory reasons for her termination are a pretext. Defendant notes that Banks has provided no proof as to the falsity of the letters or, even if they were false, that they are a pretext for gender discrimination as opposed to a pretext for another reason, such as Moore's lack of desire to work with Banks.

Defendant asserts that the legitimate, non-discriminatory reasons can not be a pretext for gender discrimination given that defendant hired a female to fill the position after it terminated Banks. Defendant argues that unsupported, conclusory allegations – such as that Banks did not commit the acts outlined in Moore's letters – are insufficient to challenge the writings themselves. Banks admitted at her deposition that it would have been legitimate to terminate her if Moore had perceived her as insubordinate, disloyal or unprofessional. (Dep. of Antrelle Banks at pp. 65-66, attached to Def.'s Reply Mem.). Banks also admitted at her deposition that there were sufficient non-discriminatory reasons to terminate her as expressed in Moore's and Griggs' letters. (*Id.*). Defendant notes that the law is clear that unsupported allegations will not survive a motion for summary judgment in a Title VII suit. Defendant contends that Banks' utter lack of proof – as opposed to the written, unchallenged proof of legitimate, non-discriminatory reasons for terminating Banks – entitles it to summary judgment.

**III.    Analysis**

## A. Summary Judgment Standard

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in [his] favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## B. Gender Discrimination

Title VII prohibits an employer from failing or refusing to hire or discharge an individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The plaintiff must first establish a *prima facie* case of discrimination. *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish this *prima facie* case under Title VII, the plaintiff must prove that (1) she is a member of a protected class, (2) she was qualified for the position that she held, (3) she was discharged, and (4) after her discharge was replaced with a person who is not a member of the protected class or that others, similarly situated yet outside her protected class, were treated more favorably than she. *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004); *Meinecke v. H&R Block*, 66 F.3d 77, 83 (5th Cir. 1995) (per curiam) (citation omitted).

Establishing a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 525 (1993); *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981); *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992 (5th Cir. 1996) (en banc). This presumption places on the defendant the burden of producing evidence that the challenged employment action was taken for a legitimate, nondiscriminatory reason. *Hicks*, 509 U.S. at 507; *Burdine*, 450 U.S. at 254; *Rhodes*, 75 F.3d at 992-93. The defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, "if believed by the trier of fact," would support a finding that unlawful discrimination was not the cause of the employment action. *Hicks*, 509 U.S. at 507; *Burdine*, 450 U.S. at 254-55; *Rhodes*, 75 F.3d at 993.

If the defendant succeeds in carrying its burden of production, the presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture, and the trier of fact proceeds to decide the ultimate question of whether the plaintiff has proved that the defendant intentionally discriminated against her. *Hicks*, 509 U.S. at 511; *Burdine*,

450 U.S. at 253; *Rhodes*, 75 F.3d at 993. If the defendant articulates a legitimate reason, then the burden shifts back to the plaintiff to establish that the defendant's reason was pretextual and discrimination was the true motivation. *See Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001).

The first three elements of the aforementioned test are not in dispute. The Court finds, however, that Banks can not establish a *prima facie* case of gender discrimination because she can not meet the fourth element. In other words, Banks can not prove that after her discharge, she was replaced with a person who is not a member of the protected class or that others, similarly situated yet outside her protected class, were treated more favorably than she. *Bryan*, 375 F.3d at 360. It is undisputed that defendant hired a female – Ms. Hope Franklin – to replace Banks after it discharged her. (Ex. C, attached to Def.'s Mot. Supp. Summ. J.). Banks' only chance to succeed, then, is to establish that Bickham – not a member of Banks' protected class – was "similarly situated" to her. He was – and is – not.

The Fifth Circuit has often defined the term "similarly situated" in the Title VII context. Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000). Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated. *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990). This is because we require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken "under nearly identical circumstances." *Little v. Republic Ref. Co., Ltd.*,

13

924 F.2d 93, 97 (5th Cir. 1991) (internal quotation marks omitted). The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221-22 (5th Cir. 2001), shared the same supervisor or had their employment status determined by the same person, *Barnes v. Yellow Freight Sys., Inc.*, 778 F.2d 1096, 1101 (5th Cir.1985), and have essentially comparable violation histories. *Okoye v. Univ. of Tex. Houston Health Sci.*, 245 F.3d 507, 514 (5th Cir. 2001). And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. *Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 213 (5th Cir.2004). If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis. *Wallace*, 271 F.3d at 221.

The Court finds that Banks and Bickham are not "similarly situated." There can be no valid argument that the duties of a teacher are similar to the duties of an office manager. As noted above, plaintiff testified at her deposition that her duties included:

> Basically overall office management as far as handling ordering, payroll, attendance for students, attendance for employees, right hand to the school leader, typing up all documents and working hand in hand with human resources in Michigan, making sure everything was sent correctly, making sure everything was – all paperwork – basically I was like a human resources as well. Had to do drug testing, schedule interviews.

(Ex. P-1 at pp. 9-10, attached to Pl.'s Mem. Opp.). The duties of Bickham, however, were to teach

14

his students and to perform morning and afternoon cafeteria duty. (Dep. of Darren Bickham at p. 12, quoted in Def.'s Mem. Supp. Mot. Summ. J. at p. 9). Bickham had no involvement in handling the ordering, the payroll, the attendance of fellow employees, working with human resources in Michigan or the other duties listed by Banks. Indeed, at her deposition, Banks testified that her job duties were different than Bickhams'. (Dep. of Antrelle Banks at p. 68, attached to Def.'s Reply Mem.). Accordingly, Banks and Bickham were not "similarly situated" in regard to their jobs or their duties and responsibilities.

Banks' argument that she and Bickham were "similarly situated" for "one brief moment" while they both attempted to resolve the altercation between the two students finds no support in the law. Banks has cited this Court to no authority – and this Court has found none – that would support the proposition that two wholly dissimilar employees are "similarly situated" for purpose of Title VII when they allegedly act outside of the scope of their duties at the same time. Moreover, Banks admitted at her deposition that – at times – it was the duty of the teacher to escort misbehaving students to the principal's office. (*Id.* at p. 45). According to Banks, then, Bickham was not engaging in behavior outside the scope of his duties and responsibilities as a teacher.

Moreover, the Court finds that Banks and Bickham were not reprimanded for "nearly identical" misconduct. It is undisputed that Bickham was suspended, without pay, solely because of the remarks on the voice recording. (Ex. G, attached to Def.'s Mem. Supp. Mot. Summ. J.; Ex. P-5, attached to Pl.'s Mem. Opp.). Indeed, Bickham admits to such behavior. (Ex. P-2 at pp. 34-35, attached to Pl.'s Mem. Opp.). Moore reprimanded and eventually terminated Banks, however, for insubordinate and unprofessional conduct when dealing with the parents of the altercating

15

students and the police – conduct apart from any alleged statements on the voice recording. (Exs. A & B, attached to Def.'s Mem. Supp. Mot. Summ. J.; Ex. P-4, attached to Pl.'s Mem. Opp.). Indeed, Banks herself admitted at her deposition that Moore based her decision to terminate Banks on Banks' conduct alone – and not the joint conduct of Banks and Bickham. (Dep. of Antrelle Banks at p. 79, attached to Def.'s Reply Mem.). Banks has consistently testified that the voice recording only recorded her walking up and down the stairs with Bickham and her statement to one of the girls "about not fighting." (Ex. P-1 at p. 24-25, attached to Pl.'s Mem. Opp.). Banks testified:

> A. But the phone was recoding me walking up the stairs and walking down the stairs.
> Q. With Mr. Bickham?
> A. With Mr. Bickham at that particular time. The phone was also recording me telling the little girl about not fighting, you know. And it also recorded him saying if Ms. Moore asks you, tell her I told you to go outside, which wasn't the truth. He was just trying to keep the little girl from getting in trouble.
> . . . .
> Q. And to the best of your knowledge, was your – the decision to terminate you, did it have anything to do with what was said on the tape?
> A. To the best of my knowledge, I can't – I can't say that's what it was because the only thing she told me I said was where is Ms. Moore because I don't feel like walking upstairs. And that was it. That's the only thing she told me she heard me say.

(*Id.*). By Banks' own admission, Moore could not have reprimanded her for "nearly identical" conduct because she made no disrespectful or insubordinate comments on the recording – the conduct for which Moore undisputedly reprimanded Bickham. Accordingly, the circumstances under which Banks and Bickham were reprimanded were not "nearly identical."

**IV. Conclusion**

For the foregoing reasons, the Court finds that Banks can not establish a *prima facie* case of

16

gender discrimination in violation of Title VII.[4]  Accordingly, the Court GRANTS defendant's Motion for Summary Judgment [Doc. #11] and DISMISSES Banks' case with prejudice.

New Orleans, Louisiana, this 19th day of January, 2010.

*[signature: Daniel E. Knowles, III]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] Because the Court finds that Banks has failed to establish a *prima facie* case of gender discrimination, the Court need not address the parties' additional arguments raised in the pleadings.